No. 22-2159

# United States Court of Appeals for the Eighth Circuit

**EEE Minerals, LLC, and Suzanne Vohs as Trustee for The Vohs Family Revocable Living Trust,**

*Plaintiffs/Appellants,*

**and**

**State of North Dakota, the Board of University and School of Lands of the State of North Dakota, and Joseph A. Heringer as Commissioner for the Board of University and School of Lands of the State of North Dakota,**

*Defendants/Appellees.*

APPEAL FROM DECISION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NORTH DAKOTA
(1:20-CV-00219-CRH)

**REPLY BRIEF OF PLAINTIFFS/APPELLANTS**

**Vogel Law Firm**
Joshua A. Swanson (#06788)
jswanson@vogellaw.com
MacKenzie L. Hertz (#09392)
mhertz@vogellaw.com
Robert B. Stock (#05919)
rstock@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Attorneys for Plaintiffs/Appellants

# TABLE OF CONTENTS

**PAGE**

Table of Contents.................................................................................................i

Table of Authorities............................................................................................ii

Introduction........................................................................................................1

Argument............................................................................................................4

I. The facts and allegations as Vohs pled in the Complaint must be accepted as true at this stage..........................................................................4

II. Vohs has stated a claim that the Flood Control Act of 1944 preempts Chpt. 61-33.1..................................................................................6

III. A claim for just compensation under the Fifth Amendment is not barred by the doctrine of sovereign immunity.............................................9

IV. At a minimum, Vohs is entiteld to prosecive injunctive relief pursuant to *Ex Parte Young*..................................................................................14

V. Vohs adequately pled a cliam against the Commissioner in his individual capacity under 42 U.S.C. § 1983.................................................16

VI. Vohs' takings claim is ripe.......................................................................17

VII. Vohs stated a claim that the State committed an unconstitutional taking without just compensation by claiming ownership to and entering into leases for the Vohs Property, in violation of the Fifth Amendment and § 1983.......................................................................19

Conclusion.........................................................................................................22

Appellate Case: 22-2159    Page: 3    Date Filed: 09/07/2022 Entry ID: 5195411

# TABLE OF AUTHORITIES

Page

**Cases**

*A.J. ex rel. Dixon v. UNUM,*
696 F.3d 788 (8th Cir. 2012) ................................................................. 4, 5

*Alden v. Maine,*
527 U.S. 706 (1999) ............................................................................ 13, 14

*Allen v. Cooper,*
555 F. Supp. 3d 226 (E.D.N.C. 2021) ................................................. 12, 13

*Am. Minerals, LLC v. Restad Family LLP,*
No. 1:18-CV-204, 2019 WL 7605680 (D.N.D. Dec. 16, 2019) ................ 5

*Barnes v. Dist. of Columbia,*
No. 03-2547, 2005 WL 1241132 (D.D.C. May 24, 2005) ....................... 16

*Bay Point Props., Inc. v. Miss. Trans. Comm'n,*
937 F.3d 454 (5th Cir. 2019) ................................................................. 10

*Boise Cascade Corp. v. State ex rex. Or. State Bd. of Forestry,*
991 P.2d 563 (Or. Ct. App. 1999) ......................................................... 14

*Carajeski ex rel. Carajeski v. Zoeller,*
794 F.3d 828 (7th Cir. 2015) ................................................................. 17

*Central Pines Land Co. v. United States,*
107 Fed. Cl. 310 (Fed. Cl. 2010) ....................................................... 17, 20

*Ex Parte Young,*
209 U.S. 123 (1908) ......................................................................... passim

*First English Evangelical Lutheran Church of Glendale v. L.A. Cnty.,*
482 U.S. 304 (1987) ......................................................................... passim

*French-Glenn Live Stock Co. v. Springer,*
185 U.S. 47 (1902) ................................................................................. 4

*Gongolewski v. Lexington-Fayette Urban Cnty. Gov't,*
902 F.2d 932 (6th Cir. 1990) ................................................................. 16

Appellate Case: 22-2159     Page: 4     Date Filed: 09/07/2022 Entry ID: 5195411

# TABLE OF AUTHORITIES

*Hacienda Valley Mobile Estates v. City of Morgan Hill*,
　353 F.3d 651 (9th Cir. 2003) .......................................................................17

*Hollen v. C.I.R.*,
　25 Fed. Appx. 484 (8th Cir. 2002) ................................................................5

*Honchariw v. Cnty. of Stanislaus*,
　530 F. Supp. 3d 939 (E.D. Cal. 2021) .........................................................17

*In re Operation of Mo. River Sys. Litig.*,
　320 F. Supp. 2d 873 (D. Minn. 2004) ...........................................................8

*Int'l Paper Co. v. United States*,
　282 U.S. 399 (1931) ....................................................................................22

*Knick v. Township of Scott*,
　139 S. Ct. 2162 (2019) ........................................................................passim

*Kurtz v. Version N.Y., Inc.*,
　758 F.3d 506 (2d Cir. 2014) ........................................................................18

*Ladd v. Marchbanks*,
　971 F.3d 574 (6th Cir. 2020) .......................................................................10

*Loretto v. Teleprompter Manhattan CATV Corp.*,
　458 U.S. 419 (1982) ....................................................................................21

*Manning v. N.M. Energy, Minerals & Nat. Res. Dep't*,
　144 P.3d 87 (N.M. 2006) ......................................................................... 9, 14

*Mattes v. ABC Plastics, Inc.*,
　323 F.3d 695 (8th Cir. 2006) .......................................................................21

*N.W. Landowners Ass'n v. State*,
　___ N.W.2d ___, 2022 WL 3096724 (N.D. Aug. 4, 2022) .........................11

*Pascoag Res. & Dam, LLC v. Rhode Island*,
　337 F.3d 87 (1st Cir. 2003) .........................................................................18

Appellate Case: 22-2159　　Page: 5　　Date Filed: 09/07/2022　Entry ID: 5195411

# TABLE OF AUTHORITIES

PAGE

*Pakdel v. City & Cnty. of San Francisco*,
141 S. Ct. 2226 (2021) ........................................................................19

*Peters v. Village of Clifton*,
498 F.3d 727 (7th Cir. 2007) ...............................................................18

*Petro-Hunt, LLC v. United States*,
90 Fed. Cl. 51 (Fed. Cl. 2009) .............................................................22

*Pettro v. United States*,
47 Fed. Cl. 136 (Fed. Cl. 2000) ...........................................................22

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) .............................................................................15

*Sheffield v. Bush*,
No. 3:21-CV-122, ___ F. Supp. 3d. ___, 2022 WL 1638205 (S.D.
Tex. May 23, 2022) ..............................................................................15

*Sorum v. State*,
947 N.W.2d 382 (N.D. 2020) .......................................................passim

*SDDS, Inc. v. State*,
650 N.W.2d 1 (S.D. 2002) ....................................................................14

*South Dakota v. Ubbelohde*,
330 F.3d 1014 (8th Cir. 2003) ...............................................................8

*Warmington v. Bd. of Regents of Univ. of Minn*,
988 F.3d 789 (8th Cir. 2021) ...............................................................16

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172
(1985) .............................................................................................. 18, 19

*Wilkinson v. Bd. of Univ. & Sch. Lands*,
903 N.W.2d 51 (N.D. 2017) ("*Wilkinson I*") .................................passim

Appellate Case: 22-2159    Page: 6    Date Filed: 09/07/2022 Entry ID: 5195411

# TABLE OF AUTHORITIES

*Wilkinson v. Bd. of Univ.*
    947 N.W.2d 910 (N.D. 2020) ("*Wilkinson II*")....................................................passim

*Wilkinson v. Bd. of Univ. & Sch. Lands,*
    Case No. 20220037 ("*Wilkinson III*") (pending before N.D. Supreme
    Court) ........................................................................................................................11

**United States Constitution**
Supremacy Clause, Art. VI, cl. 2 ...............................................................................passim
Fifth Amendment.........................................................................................................passim
Eleventh Amendment..................................................................................................passim

**Statutes**
42 U.S.C. § 1983 .....................................................................................................16, 17, 19

Flood Control Act of 1944
    P.L. 78-534, 58 Stat. 887 (1944) ..........................................................................passim

State Ownership of Missouri Riverbed Act
    N.D. Cent. Code, Chapter 61-33.1 .......................................................................passim

**Other Materials**
*State's Reply Br., Sorum v. State,*
    2020 WL 896698 (N.D. Feb. 14, 2020) .....................................................................7

Appellate Case: 22-2159    Page: 7    Date Filed: 09/07/2022 Entry ID: 5195411

## INTRODUCTION

Under the color of state law, the State[1] has claimed, and continues to claim, ownership over property that has belonged to Vohs[2] for over half a century. Since May 5, 2010, the State has claimed, leased, and taken the Vohs Property,[3] in violation of the Vohs' constitutional rights. (*See* App. 83-106; R. Doc. 20-3). The Vohs family is not alone. While the State is correct that the nearly 10,000 other mineral acres that the State has similarly usurped are not at issue in *this* particular lawsuit, those acres paint the full picture of the State's stridently unconstitutional conduct that, in this case, has gone on for over twelve years too long. To put it bluntly, in what is supposed to be a free country that champions fundamental rights, like those to property, it is disappointing, if not disillusioning, for the State to continuously dispossess private property with no accountability, let alone respect, for the Fifth Amendment to the United States Constitution. Enough is enough.

As alleged in the Complaint, the Vohs family has owned the Vohs Property for decades upon decades. (Add. 24; App. 3; R. Doc. 1, at ¶¶ 10-11). The 1957 Warranty

---

[1] Throughout, Defendants/Appellees State of North Dakota, the Board of University and School Lands of the State of North Dakota, and Joseph A. Herigner, as Commissioner for the Board of University and School Lands of the State of North Dakota, are collectively referred to as the "State."

[2] Throughout, Plaintiffs/Appellants EEE Minerals, LLC, and Suzanne Vohs as Trustee for The Vohs Family Revocable Living Trust are collectively referred to as "Vohs."

[3] The Vohs Property refers to the 276.80 mineral acres in McKenzie County, North Dakota, as identified in the Complaint. (Add. 24; App. 3; R. Doc. 1, at ¶¶ 10-11).

Appellate Case: 22-2159    Page: 8    Date Filed: 09/07/2022 Entry ID: 5195411

Deed unequivocally recognized and confirmed that ownership. (Add. 32-34; App. 11-13; R. Doc. 1-2). That is, in 1957, the federal government of the United States acquired the Vohs Property pursuant to the Flood Control Act, which, among other things, authorized the United States to acquire property to construct the Garrison Dam on the Missouri River in North Dakota and flood that land with the resulting Lake Sakakawea reservoir. *Id.* In acquiring the property, however, the United States <u>expressly</u> reserved to Vohs their oil and gas interests in the property, subject only to a reservation of rights by the United States to flood and submerge the property. *Id.*

The United States acquired the Vohs Property from *Vohs* – not the State – because *Vohs* – and not the State – owns the Vohs Property.

Yet, on May 5, 2010, the State of North Dakota, by and through the Commissioner, brazenly ignored Vohs' well-established rights to and ownership of the Vohs Property. The State unilaterally determined it could disregard the historical, documented ownership of private mineral rights and entered into eight leases to the property. (App. 83-106; R. Doc. 20-3). This itself is an unconstitutional taking, without just compensation, in violation of the Fifth Amendment. This infringement itself demands relief.

Then, in 2017, the State doubled down on its unconstitutional usurpation of the Vohs Property when it enacted the State Ownership of Missouri Riverbed Act, N.D. CENT. CODE, Chapter 61-33.1 ("Chpt. 61-33.1"). By that statutory scheme, the State acknowledged that it had been wrongfully taking at least *some* private property. *See*

- 2 -

*generally Wilkinson v. Bd. of Univ.*, 947 N.W.2d 910 (N.D. 2020) ("*Wilkinson II*"); *Wilkinson v. Bd. of Univ. & Sch. Lands*, 903 N.W.2d 51, 58 (N.D. 2017) ("*Wilkinson I*"). Indeed, the State previously claimed ownership of mineral rights up to the current ordinary high water mark ("OHWM"). Through Chpt. 61-33.1, the State recognized that practice wrongfully encroached on private property interests, and the State therefore purportedly limited its ownership claim to the historical OHWM, based presumptively on the Segment Maps developed by the United States Army Corps of Engineers ("Corps"). N.D. CENT. CODE § 61-33.1-02 & -03.

However, Chpt. 61-33.1 did not fully cure the State's intrusion into private property rights. Instead, the State inexplicably deviated from the Corps' Segment Maps to continue to claim nearly 10,000 acres beyond the historical OHWM. Unfortunately, those 10,000 acres include the Vohs Property, to which the State continues to unconstitutionally lease and claim ownership. And, even assuming the State were correct in its assertion as to the proximity of the Vohs Property to the 10,000 acres – which is the opposite of the requirement under Federal Rule of Civil Procedure 12(b) that all facts be construed in Vohs' favor – the State *still* leased the Vohs Property in 2010, seven years before Chpt. 61-33.1 was enacted. This conduct, under Chpt. 61-33.1, is an additional unconstitutional taking. That is, in this respect, Chpt. 61-33.1 is unconstitutional as applied to the Vohs Property, which further entitles Vohs relief.

Accordingly, the Vohs family has brought this lawsuit for relief from the State's unconstitutional conduct. The Vohs family has stated viable claims for preemption and

- 3 -

violations of the Takings Clause. The Vohs family therefore respectfully requests this Court reverse the district court's contrary conclusions to allow them to fight for relief from the State's relentless intrusion into their property rights. Justice demands it.

## ARGUMENT

### I. The facts and allegations as Vohs pled in the Complaint must be accepted as true at this stage.

The State spills considerable ink attempting to litigate the underlying facts and merits of Vohs' ownership claim to the Vohs Property. However, the State is defending a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, not a trial verdict or even a summary judgment motion. At this stage, Vohs' facts as plead must be accepted as true and viewed in the light most favorable to Vohs. *See, e.g.*, *A.J. ex rel. Dixon v. UNUM*, 696 F.3d 788, 789 (8th Cir. 2012).

The Vohs family has unambiguously alleged that they own the Vohs Property, and that they have owned the Vohs Property for decades. (*Complaint*, Add. 23-30; App. 1-9; R. Doc. 1, at ¶¶ 2, 9-14, 16-17). They have similarly alleged that the United States confirmed that ownership in the 1957 Warranty Deed and that their ownership is reflected by the Corps' Segment Maps. *Id.* Finally, they have alleged, unambiguously, that the State has wrongfully asserted ownership to the Vohs Property, in violation of their constitutional rights. *Id.* (*see, e.g.*, R. Doc. 1, at ¶¶ 15-16)

The issues of the true ownership of the Vohs Property are necessarily riddled with questions of fact. *See, e.g.*, *French-Glenn Live Stock Co. v. Springer*, 185 U.S. 47 (1902)

- 4 -

(noting questions of fact around whether lake ever existed as it related to implications for property ownership); *Hollen v. C.I.R.*, 25 Fed. Appx. 484 (8th Cir. 2002) (noting question of who owned the property was, at best, a mixed question of fact and law); *Am. Minerals, LLC v. Restad Family LLP*, No. 1:18-CV-204, 2019 WL 7605680 (D.N.D. Dec. 16, 2019) (considering whether genuine issues of material fact existed on ownership interest in minerals). As such, at this stage, allegations in the Complaint that the Vohs family owns the Vohs Property and that the State has wrongfully claimed ownership must be assumed as true. *See Dixon*, 696 F.3d at 789. The Court must reject any contrary assertions by the State as to these fact issues.

For example, the State repeatedly emphasizes that Vohs does not dispute the existence of the equal footing doctrine. However, the State ignores the fact that the underlying dispute in this case *is not* about whether the equal footing doctrine exists. The dispute is what the State owns pursuant to that doctrine, as the State continuously, unabashedly, attempts to expand its claims. In Vohs' view, the equal footing doctrine provides the State only that property up to the historical OHWM, which does not encompass the Vohs Property as evidenced in and of itself by the 1957 Warranty Deed and related Corps Segment Map. The State takes a much broader view of its ownership. At bottom, there is a fact dispute. That fact dispute cannot be resolved at this stage. Instead, Vohs' facts, as plead, control the analysis.

Finally, it is worth noting that in attempting to litigate the factual issues at this stage of this case, the State has *conceded* that they have taken at least 4.2 acres of the Vohs

- 5 -

Property. (Brief of Defendants/Appellees, at 5). In other words, the State has conceded to a taking of at least 4.2 acres, without just compensation.

## II. Vohs has stated a claim that the Flood Control Act of 1944 preempts Chpt. 61-33.1.

Vohs will not repeat the full argument and explanation of the preemption claim set forth in the principal brief. Instead, Vohs makes a few important points regarding the State's arguments.

First, the State repeatedly emphasizes its position that this Court should supposedly give the State's interpretation of property rights more weight because it has a significant interest in such disputes. In the same breath, however, the State dismisses any value in the *State* Supreme Court of North Dakota's view of the property dispute and preemption issue here.

More specifically, as discussed at length in Vohs' principal brief, the North Dakota Supreme Court has itself found that the Flood Control Act of 1944, P.L. 78-534, 58 Stat. 887 (1944), preempts any State claim in property like the Vohs Property. *See Sorum v. State*, 947 N.W.2d 382, 397-98 (N.D. 2020). That is, the North Dakota Supreme Court held that the Flood Control Act applies to property like the Vohs Property and that any State claim to own such property, including under Chpt. 61-33.1, is preempted. *See id.* ("These federal laws preempt operation of any state law that would otherwise vest ownership in the state, including chapter 61-33 and the public trust doctrine.").

Appellate Case: 22-2159    Page: 13    Date Filed: 09/07/2022 Entry ID: 5195411

Even assuming the State is somehow drawing a distinction that the State Supreme Court should be awarded less deference than the State entities sued here, those same State entities themselves argued in *Sorum* that the Flood Control Act would preempt any State law claiming ownership to property like that at issue here. Indeed, the State appropriately recognized that to find otherwise would "obliterate[] the Supremacy Clause because, under [that] theory, all property acquired by the Federal Government to construct the Garrison Dam and Federal Public Domain Lands were lost by the passage of" Chpt. 61-33.1. *State Reply Br.*, 2020 WL 896698, at ¶ 4 (N.D. Feb. 14, 2020).

Vohs of course recognizes that *Sorum* is not binding on this Court on the question of preemption. However, if the Court chooses to award special deference to any State views, Vohs respectfully requests it extend that generosity to the State's views as articulated in *Sorum*, 947 N.W.2d at 397-98.

Second, the State, in a conclusory fashion, contends no connection exists between the Flood Control Act's purpose and the State's intrusion into property rights. (*See* Brief of Defendants/Appellees, at 15). Despite the Corps' ongoing and extensive exercise of power over the River basin, the State asserts the federal government's property acquisition is complete, such that any continued management does not "*ipso facto* establish that Chapter 61-33.1 stands as an obstacle." *Id.* at 17. However, the State failed to meaningfully address the largest gap in its position—the federal government's

- 7 -

reservation of rights in the 1957 Warranty Deed.[4]  (Add. 32-34; App. 11-13; R. Doc. 1-2).

Preemption arises "when state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress."  *In re Operation of Mo. River. Sys. Litig.*, 320 F. Supp. 2d 873, 878 (D. Minn. 2004) (emphasis added) (citations omitted).  As Vohs has explained, the initial construction of the Garrison Dam was far from the Flood Control Act's full and final objective.  To be sure, the Corps, to this day, exercises considerable power and control over the River basin.  *See generally South Dakota v. Ubbelohde*, 330 F.3d 1014 (8th Cir. 2003).  The 1957 Warranty Deed itself evidences this purpose and intent behind the Flood Control Act.  Indeed, the United States *expressly* reserved rights over the Vohs Property for flooding and inundation in the 1957 Warranty Deed.  (Add. 32-34; App. 11-13; R. Doc. 1-2).  This alone sustains the Vohs' preemption claim.

Third and finally, the State once again attempts to bolster its arguments against preemption by asserting it is undisputed that the State acquired certain property pursuant to the equal footing doctrine.  The State misses the point.  *Cf. Sorum*, 947 N.W.2d at 397-98.  The Vohs Property was not part of that property to which the State acquired at statehood.  To the extent that the State disagrees, that is a fact dispute, which

---

[4] Notably, the State's overuse of Latin buzzwords cannot hide the gaps in its arguments.

Appellate Case: 22-2159     Page: 15     Date Filed: 09/07/2022 Entry ID: 5195411

certainly is not properly resolved on a Rule 12 motion. Vohs will happily defeat the State's factual position at trial.

In sum, Chpt. 61-33.1 is preempted as applied to Vohs because it directly interferes with the Flood Control Act's operation and purpose and obstructs the rights secured to Vohs by the 1957 Warranty Deed. It is impossible to comply with both state and federal law when deciding who owns the minerals at issue. Under these circumstances, state law necessarily gives way to federal law, and Chpt. 61-33.1 is preempted.

## III. A claim for just compensation under the Fifth Amendment is not barred by the doctrine of sovereign immunity.

The State argues "the Fifth Amendment is no exception to the rule that States enjoy sovereign immunity under the Eleventh Amendment from suits brought in federal court." (Brief of Defendants/Appellees, at 23). However, just the inverse is true: State sovereign immunity is <u>not</u> an exception to the Fifth Amendment's express, self-executing obligation to provide just compensation. *See* U.S. Const. Amend. V. ("[N]or shall private property be taken for public use, without just compensation."). Indeed, the Fifth Amendment's requirement of "just compensation" is one of only two constitutional clauses that dictate a particular remedy. *See Manning v. N.M. Energy, Minerals & Nat. Res. Dep't*, 144 P.3d 87, 98 (N.M. 2006). The Court should decline the State's invitation to ignore the Fifth Amendment's just compensation requirement which, taken together with the Supreme Court's recent guidance in *Knick* and

- 9 -

longstanding guidance from *First English*, clearly entitles Vohs relief for the violation of its federal constitutional rights in this federal forum.

To support its claim that sovereign immunity circumvents the Fifth Amendment, the State relies on non-binding opinions from other circuits that predate *Knick*. (Brief of Defendants/Appellees, at 24). The State further depends on opinions from those circuits after *Knick*, (*id.* at 26), which state the obvious: *Knick* did not expressly wrestle with the tension between the Fifth and Eleventh Amendments such that those circuits remain powerless to revisit their prior decisions on the issue absent en bac review or direct guidance from the Supreme Court. *See, e.g.*, *Ladd v. Marchbanks*, 971 F.3d 574, 580 (6th Cir. 2020) (noting the panel was bound absent a Supreme Court case mandating modification of its prior holdings); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 n.1 (5th Cir. 2019) (noting that the panel could not revisit the Circuit's prior decisions).

This Court, however, does not face the hurdle of prior binding precedent because it has never wrongfully barred property owners from seeking just compensation in federal court. Instead, the Court is free to follow the Supreme Court's most recent guidance in *Knick*, which clearly states that, once a taking occurs, a "property owners can bring a *federal suit* at that time." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2172 (2019).

If this Court accepts the State's conclusion that sovereign immunity bars just compensation in federal court, it will not only ignore the express relief provided by the

- 10 -

United States Constitution, it will also allow the harms *Knick* sought to avoid. Importantly, *Knick* relieved property owners of the preclusion trap in which they were previously forced to first subject themselves to the mercy of a state court's resolution of their takings claim before they could go to a federal forum to defend their federal constitutional rights. *Id.* at 2167. Of course, that requirement placed property owners in the impossible position, because if they lost in state court, their claim would be effectively barred in federal court. *Id.*

The same outcome will happen if the Court accepts the State's arguments here. Property owners will be again left to the mercy of state courts, just as *Knick* cautioned against, albeit for a different reason. That is, property owners will be barred from defending their federal constitutional rights in federal courthouses. Given the State's repeated disregard for property rights, the charity of state courts provides inadequate protection for federal constitutional rights. *See, e.g.*, *Wilkinson v. Bd. of Univ. & Sch. Lands*, Case No. 20220037 ("*Wilkinson III*") (pending before the North Dakota Supreme Court); *Wilkinson II*, 947 N.W.2d 910 (discussing the State's repeated misconduct in this specific context); *Wilkinson I*, 903 N.W.2d 51; *see also N.W. Landowners Ass'n v. State*, ___ N.W.2d ___, 2022 WL 3096724 (N.D. Aug. 4, 2022) (rejecting portions of yet another state statute as unconstitutional in authorizing oil and gas operators to inject into the pore space without just compensation to the surface owner).

Indeed, in this case alone, the State originally made baseless claims to property up to the current OHWM. Then, nearly a decade later in 2017, even the State could

- 11 -

finally see that intrusion was unwarranted, passing Chpt. 61-33.1, to purportedly limit any State claim to the historic OHWM, as defined by the Corps. Yet, the State then deviated from the Corps' definition, continuing to usurp over 10,000 addition mineral acres, including the Vohs Property. Leaving private property owners, like Vohs, to the mercy of the States is not a viable solution, let alone appropriate protection for fundamental rights guaranteed under the United States Constitution.

Furthermore, *Knick* is not the first time the Supreme Court suggested that State sovereign immunity does not preclude a Fifth Amendment claim for just compensation. That is, the State's statement that Vohs' position is supported by only "a single district court decision" simply is not true. (Brief of Defendants/Appellees, at 27). To the contrary, although that district court opinion is also well-reasoned and supportive, *see Allen v. Cooper*, 555 F. Supp. 3d 226 (E.D.N.C. 2021), the *Supreme Court* itself previously suggested in *First English* that sovereign immunity does not prevent claims for just compensation against States in federal court. In that case, the Supreme Court emphasized that the Fifth Amendment's just compensation requirement is "self-executing," meaning once a taking occurs, "the compensation remedy is *required* by the Constitution." *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 316 (1987). In particular, the Supreme Court stated:

> The Solicitor General urges that the prohibitory nature of the Fifth Amendment, … combined with principles of sovereign immunity, establishes that the Amendment itself is only a limitation on the power of the Government to act, not a remedial provision. The cases cited in the text, we think, refute the argument of the United States that "the

- 12 -

Constitution does not, of its own force, furnish a basis for a court to award money damages against the government." Brief for United States as Amicus Curiae 14. <u>Though arising in various factual and jurisdictional settings, these cases make clear that it is the Constitution that dictates the remedy for interference with property rights amounting to a taking</u>. *See San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 655, n. 21, 101 S.Ct. 1287, 1305–1306, n. 21, 67 L.Ed.2d 551 (1981) (BRENNAN, J., dissenting), quoting *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789 (1947).

*Id.* at 316 n.9. Thus, dating as far back as *First English*, the Supreme Court has contemplated that—if push came to shove—the Fifth Amendment requirement for a "remedy for interference with property rights" necessarily trumps any claim of sovereign immunity. *Id.*

Further supportive of Vohs' position are well-reasoned opinions from State Supreme Courts holding that sovereign immunity cannot erase the relief promised under the Fifth Amendment's just compensation clause. In particular, state courts had wrestled with the tension between the Fifth Amendment's guarantee of just compensation for federal takings claims and sovereign immunity after the Supreme Court elaborated in *Alden v. Maine*, 527 U.S. 706 (1999), that states' sovereign immunity can shield them from damages in state courts as well. *Id.* at 712 (finding Congress does not have "the power to subject nonconsenting States to private suits for damages in state courts").

Much like the well-reasoned opinion in *Allen*, 555 F. Supp. 3d 226, those courts have stressed that constitutional claims under the Fifth Amendment "are actionable against a state, even without a waiver or congressional abrogation of sovereign

- 13 -

immunity, *due to the nature of the constitutional provision involved.*" *Boise Cascade Corp. v. State ex rel. Or. State Bd. of Forestry*, 991 P.2d 563, 568 (Or. Ct. App. 1999) (emphasis added); *see also Manning v. N.M. Energy*, 144 P.3d 87, 96-98 (N.M. 2006) (noting the Fifth Amendment's self-executing nature and specific remedy) ("The Framers of the Constitution explicitly referred to remedies only twice in the Constitution, one being the just compensation provision of the Takings Clause"); *SDDS, Inc. v. State*, 650 N.W.2d 1, 8-9 (S.D. 2002) (rejecting that the Eleventh Amendment barred a federal takings claim). Of course, the "nature" of the constitutional provision is that it provides the *express* remedy that Vohs seeks: just compensation. *Boise Cascade*, 991 P.2d at 568. Vohs therefore respectfully requests this Court resolve the tension between the Fifth and Eleventh Amendments in favor of this express remedy.

In sum, this Court should find that the "constitutional privilege" of State's sovereign immunity "does not confer upon a state a concomitant right to disregard the Constitution. The states and their officers are bound by obligations imposed by the Constitution." *SDDS, Inc.*, 650 N.W.2d at 8 (quoting *Alden*, 527 U.S. at 755). Here, the Constitution imposes the obligation of just compensation.

## IV.   At a minimum, Vohs is entitled to prospective injunctive relief pursuant to *Ex Parte Young*.

Vohs seeks the remedy that the Fifth Amendment requires: just compensation. However, if this Court finds that sovereign immunity prevents that claim in federal

- 14 -

court, Vohs nevertheless is entitled, at a minimum, to prospective injunctive relief, as set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

The State relies on *Ruckelshaus* to argue that Vohs is not entitled to such relief. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984). Both *Knick* and *Ruckelshaus* stand for the proposition that generally just compensation, rather than equitable relief, is the appropriate remedy for a government taking. That is unremarkable given the Fifth Amendment's plain text requiring just compensation.

The State, however, cannot have it both ways. They cannot both argue that the express remedy of just compensation is unavailable in federal court, *and* that the alternative remedy of prospective injunctive relief, as set forth in *Ex Parte Young*, is unavailable. To the contrary, courts have found that if, for whatever reason, "monetary relief" for a federal takings claim "is unavailable in federal court," then private property owners may "properly [bring] takings claims under *Ex Parte Young* and [seek] prospective, equitable relief in federal court." *Sheffield v. Bush*, No. 3:21-CV-122, ___ F. Supp. 3d. ___, 2022 WL 1638205, at *8 (S.D. Tex. May 23, 2022) (collecting cases).

Any contrary conclusion leaves Vohs, and other property owners, in an impossible position where the very State that is trampling on their federal constitutional rights is the only forum in which they can seek relief. This is inconsistent with the plain language of the Fifth Amendment as well as its intent, and inconsistent with *Knick*. Accordingly, if the Court finds that just compensation is unavailable, it should not bar a claim for prospective injunctive relief as contemplated in *Ex Parte Young*.

- 15 -

## V. Vohs adequately pled a claim against the Commissioner in his individual capacity under 42 U.S.C. § 1983.

Finally, Vohs seeks relief against the Commissioner, in his individual capacity, for the unconstitutional taking, and § 1983 clearly allows for monetary relief in the form of just compensation under these circumstances. Yet, the State contends Vohs cannot advance that claim because the Complaint does not sufficiently state a claim against the Commissioner in his individual capacity. Vohs respectfully disagrees.

Rather, Vohs specifically sets forth in the § 1983 claim that the Commissioner "*is an individual* who, under the color of state law," infringed Vohs constitutional rights. (Add. 29; App. 8; R. Doc. 1 at ¶ 35) (emphasis added). While Vohs did not provide such details in the caption of the Complaint, that is not required. Instead, a pleading must be read as a whole, including the body of the Complaint, in determining the capacity in which a defendant is sued. *See, e.g.*, *Gongolewski v. Lexington–Fayette Urban Cnty. Gov't*, 920 F.2d 932, 1990 WL 200378, at *2 (6th Cir.1990) (per curiam); *Barnes v. District of Columbia*, No. 03-2574, 2005 WL 1241132, at *2 (D.D.C. May 24, 2005); *see also Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021) ("The complaint should be read as a whole." (citations omitted)). Accordingly, Vohs requests this Court either reject this argument or remand with instructions that Vohs be given the opportunity to amend the Complaint to make this point clearer.

Finally, the State groundlessly asserts that it is inappropriate to bring a takings claim under § 1983. Not so. Instead, it is well-established that § 1983 is the appropriate

Appellate Case: 22-2159     Page: 23     Date Filed: 09/07/2022 Entry ID: 5195411

vehicle for bringing takings claims. *See Carajeski ex rel. Carajeski v. Zoeller*, 794 F.3d 828, 832 (7th Cir. 2015) (noting a takings claim "invoke[s] § 1983"); *see also Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) (noting that § 1983 is the proper vehicle); *Honchariw v. Cnty. of Stanislaus*, 530 F. Supp. 3d 939, 945-46 (E.D. Cal. 2021) (collecting cases). Therefore, any suggestion that § 1983 does not apply is meritless.

In sum, this Court has subject-matter jurisdiction to decide the merits of the federal takings claims asserted by Vohs. Any contrary conclusion is to relegate the Fifth Amendment's just compensation clause to a second-class position among fundamental constitutional rights. Given the central importance to protecting private property rights under the Bill of Rights, that outcome is unacceptable. Instead, Vohs respectfully requests this Court find that they are entitled to bring a claim for just compensation against the State in federal court, as contemplated in *First English* and *Knick*. Alternatively, at a minimum, Vohs is entitled to bring a claim for prospective injunctive relief pursuant to *Ex Parte Young*, and the claim against the Commissioner in his individual capacity under § 1983.

## VI. Vohs' takings claim is ripe.

As a final last-ditched effort to thwart federal jurisdiction over this matter, the State, for the first time, suggests that a Fifth Amendment takings claim is unripe for judicial review. More specifically, the State asserts that Vohs failed to exhaust state

remedies before filing in federal court. *See* Brief of Defendants/Appellees, at 36 (noting Vohs "failed to avail themselves of that avenue before suing the State in federal court").

First of all, the State's argument can only apply if Vohs' claims are strictly for regulatory, rather than physical, takings. Indeed, even before *Knick*, it was widely accepted that any final-decision requirement is automatically satisfied in physical takings actions because "[w]here there has been a physical invasion, the taking occurs at once." *Pascoag Res. & Dam, LLC v. Rhode Island*, 337 F.3d 87, 91-92 (1st Cir. 2003); *see also Kurtz v. Version N.Y., Inc.*, 758 F.3d 506 (2d Cir. 2014); *Peters v. Village of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007). Thus, the State's ripeness argument necessarily fails because, as explained below, the State effectuated a physical taking of the Vohs Property.

Second, and perhaps more importantly, even in the context of regulatory takings, the State's argument directly contradicts the guidance in *Knick*, which, in reversing *Williamson County*, held that a property owner has a ripe, actionable claim in federal court "as soon as a government takes his property for public use without paying for it." 139 S. Ct. at 2170. Here, Vohs had an actionable claim both before passage of Chpt. 61-33.1, when the State first entered into leases to the Vohs Property in 2010, and after the passage of Chpt. 61-33.1, when the State continued its baseless ownership claim. As the Supreme Court explained in *Knick*, "because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner *can bring a federal suit at that time*." 139 S. Ct. at 2172 (emphasis added). It is impossible to reconcile the State's ripeness argument with *Knick*'s express holding that property

- 18 -

owners can bring their claims in federal court "without [first] bringing any sort of state lawsuit." *Id.*

To salvage its position, the State attempts to draw a distinction between *Knick*'s "compensation-exhaustion requirement" and a "finality requirement." (Defendants/Appellees, at 35). It is a distinction without meaning, which is probably why the Supreme Court has *already rejected it*. Indeed, in *Pakdel*, the Supreme Court dismissed this tortured view of finality, reaffirming "the 'settled rule' that 'exhaustion of state remedies is *not* a prerequisite'" for property owners like Vohs to seek relief from "unconstitutional treatment at the hands of state officials." *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021) (quoting *Knick*, 139 S. Ct. at 2167). This Court should following the Supreme Court's unambiguous holding in *Pakdel* and reject the State's unsubtle attempt to revive *Williamson County*.

## VII. Vohs stated a claim that the State committed an unconstitutional taking without just compensation by claiming ownership to, and entering into leases for, the Vohs property, in violation of the Fifth Amendment and § 1983.

Vohs stated claims for both temporary physical and regulatory takings. Again, Vohs will not repeat the arguments from its principal brief, which explained in detail how the State intruded into their property rights, by claiming ownership of the Vohs Property both before and after the passage of Chpt. 61-33.1 and by entering into leases for that property. Instead, Vohs points out a few notable inaccuracies in the State's arguments.

First, the State suggests that a lease cannot constitute a physical taking. Of course, the case law on this issue universally rejects the State's position. *See, e.g.*, *Central Pines Land Co. v. United States*, 107 Fed. Cl. 310 (Fed. Cl. 2010) (lease of natural resources is a physical taking); *Petro-Hunt, LLC v. United States*, 90 Fed. Cl. 51 (Fed. Cl. 2009) (same); *Pettro v. United States*, 47 Fed. Cl. 136, 149 (Fed. Cl. 2000) (same); *see also First English*, 482 U.S. at 318 (noting that temporary physical takings "are not different in kind from permanent takings"); *Int'l Paper Co. v. United States*, 282 U.S. 399, 404-06 (1931) (appropriation of water is a taking).

Second, the State remarkably contends that Vohs has not alleged that the State leased the Vohs Property to effectuate a temporary physical taking. Yet, the State cites no authority that Vohs must allege with that level of particularity each and every action the State has taken in intruding on their rights to property to allege a viable takings claim. Again, this case is only at the pleading stage. Vohs will prove their claim in the later stages of this case. The State further criticizes Vohs for relying on "documents attached to the complaint" in asserting that "the State committed an unconstitutional taking by entering into leases for the" Vohs Property. (Defendants/Appellees, at 39). Of course, however, the Court may rely on materials "necessarily embraced by the

pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).[5]

Third, the State dismisses the overwhelming support that Vohs cited in support of the takings claims, suggesting that later opinions in those cases dismissing them before they were ultimately resolved on the merits renders them "inapplicable." (Brief of Defendants/Appellees, at 40). The ultimate resolution of those cases is neither here nor there. Instead, those cases include persuasive authority about how conduct like the State's in this case amounts to a government taking that requires just compensation. To be sure, Vohs never suggested to this Court that those opinions, from other jurisdictions, were binding. Instead, Vohs applied the sound logic from those cases to the facts of this case, which demands the same conclusion that Vohs' takings claims survive the pleading stage in this case, like the takings claims survived the pleading stages of those cases.

Finally, Vohs once again simply stresses that at the pleading stage it is inappropriate to make findings of fact on the ownership of the Vohs Property. Vohs has adequately pled that the Vohs family indeed owns the Vohs Property. However,

---

[5] It is also worth noting that the State repeatedly feels the need to highlight they only conceded to taking "merely **4.2 ACRES**." (Brief of Defendants/Appellees, at 39). Of course, though, a taking is a taking no matter how small. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (cable box).

Appellate Case: 22-2159    Page: 28    Date Filed: 09/07/2022 Entry ID: 5195411

Vohs need not prove that point at the pleading stage, and the State's repeated attempts to turn its Rule 12 motion into a trial must be rejected.

## CONCLUSION

For the foregoing reasons, Vohs respectfully requests this Court reverse and remand this case for further proceedings.

Dated:  September 6, 2022     VOGEL LAW FIRM

By: _____
    Joshua A. Swanson (#06788)
    jswanson@vogellaw.com
    MacKenzie L. Hertz (#09392)
    mhertz@vogellaw.com
    Robert B. Stock (#05919)
    rstock@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983

ATTORNEYS FOR PLAINTIFFS/APPELLANTS

**Certificate of Compliance with Word Limit**

　　1.　　This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,570 words.

　　2.　　This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(1)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

Dated:  September 6, 2022　　　VOGEL LAW FIRM

By: _____

　　　Joshua A. Swanson (#06788)
　　　jswanson@vogellaw.com
　　　MacKenzie L. Hertz (#09392)
　　　mhertz@vogellaw.com
　　　Robert B. Stock (#05919)
　　　rstock@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983

Attorneys for Plaintiffs/appellants